# UNITED STATES DISTRICT COURT
## DISTRICT OF CONNECTICUT

| | |
|---|---|
| UNITED STATES OF AMERICA | |
| v. | No. 3:19-cr-00038 (JAM) |
| DAMON HILL, *Defendant*. | |

## ORDER GRANTING MOTION FOR RELEASE

Damon Hill is a prisoner of the Federal Bureau of Prisons ("BOP"). In light of his particular vulnerability to the rapidly spreading coronavirus ("COVID-19"), he moves under 18 U.S.C. § 3582(c)(1)(A) for a reduction of his remaining term of imprisonment. I will grant the motion for a reduction of sentence to a sentence of time served as of May 20, 2020, with three years of supervised release to follow. His conditions of supervised release shall be amended to include home detention with electronic monitoring until December 10, 2020, which was his scheduled date for release from imprisonment. This ruling supplements the reasons stated by the Court on the record during the course of yesterday's hearing on this motion.

### BACKGROUND

On August 30, 2019, I sentenced Hill principally to a term of 30 months of imprisonment following his guilty plea to a charge of unlawful possession of a firearm by a convicted felon. Hill is now 40 years old and, as shown in the presentence report and in BOP medical records, he suffers from hypertension and has had a splenectomy that compromises his immune system.

Hill has been incarcerated since he was arrested on October 23, 2018. On that date he was driving while under the influence of alcohol and, swerving across the road, he hit another car. The police found a loaded pistol and packages of what appeared to be marijuana in the car. At

1

the time of his arrest Hill was still on supervised release from a prior federal drug conviction. Although his arrest in October 2018 represented one of several violations during his prior period of supervised release, Hill also engaged in genuine rehabilitation efforts during his supervised release, including participating in the District of Connecticut's Support Court to address his alcoholism and substance abuse issues.

Hill is presently incarcerated at FCI Danbury, which is one of the federal prison facilities most impacted by the COVID-19 virus.[1] His motion seeks early release from imprisonment to the home of Ayanna Walcott. The parties do not dispute that Hill has now properly exhausted the administrative procedures required before the filing of this motion. Yesterday I held a hearing on Hill's motion and heard from counsel, from Hill, from Walcott, and from the U.S. Probation Office.

### DISCUSSION

I will first review the statutory and regulatory framework that governs motions under 18 U.S.C. § 3582(c)(1)(A). Then I will address how these factors apply to this case.

### *Statutory and regulatory framework*

Federal law allows a court to grant a "compassionate release" motion to reduce a federal prisoner's sentence for "extraordinary and compelling reasons." 18 U.S.C. § 3582(c)(1)(A)(i). Previously it was only the BOP that could file this kind of motion, but amidst widespread complaints about the failure of the BOP to file motions on prisoners' behalf, Congress amended the law with the First Step Act of 2018, Pub. L. No. 115-391, 132 Stat. 5194 (2018), to allow prisoners the right to file their own motions for a sentence reduction if they first exhaust the

---

[1] *See* Federal Bureau of Prisons, COVID-19 Coronavirus (COVID-19 Cases) (reporting 34 inmates at FCI Danbury who have tested positive and one inmate death), https://www.bop.gov/coronavirus/ (last visited May 18, 2020) [https://perma.cc/7PQT-RXVW].

statute's procedures for initially making a request to the warden to file a motion on their behalf. *See United States v. Almontes*, 2020 WL 1812713, at *1 (D. Conn. 2020).

Provided that a prisoner has satisfied the statute's exhaustion requirement, section 3582(c)(1)(A) establishes several criteria for a court to consider when deciding whether to grant the motion for a sentence reduction. First of all, there has to be no less than "extraordinary and compelling reasons" to warrant a sentence reduction. 18 U.S.C. § 3582(c)(1)(A)(i).[2] The statute does not further define this term but it instructs courts to consider whether a sentence reduction is "consistent with applicable policy statements issued by the Sentencing Commission." *Ibid.* Congress has separately directed the Sentencing Commission to "describe what should be considered extraordinary and compelling reasons for sentence reduction, including the criteria to be applied and a list of specific examples," while also advising that "[r]ehabilitation of the defendant alone shall not be considered an extraordinary and compelling reason." 28 U.S.C. § 994(t).

In accordance with this instruction from Congress, the Sentencing Commission has issued a policy statement in the U.S. Sentencing Guidelines that sets forth criteria for what constitute "extraordinary and compelling reasons." *See* U.S.S.G. § 1B1.13 cmt. n.1 (2018). The commentary provides, for example, that "extraordinary and compelling reasons" exist if the defendant "is suffering from a terminal illness" or if the defendant otherwise has a serious condition "that substantially diminishes the ability of the defendant to provide self-care within the environment of a correctional facility and from which he or she is not expected to recover." *Ibid.* cmt. n.1(A). The commentary further provides for a catch-all "Other Reasons" that "[a]s

---

[2] As an alternative to the existence of such "extraordinary and compelling reasons," section 3582(c)(1)(A) allows for motions to be filed by the BOP on behalf of prisoners who are at least 70 years old and have served at least 30 years in prison. 18 U.S.C. § 3582(c)(1)(A)(ii). This alternative is not at issue in this case.

determined by the Director of the Bureau of Prisons, there exists in the defendant's case an extraordinary and compelling reason other than, or in combination with, the reasons described in subdivisions (A) through (C)." *Ibid.* cmt. n.1(D).

As numerous courts have recognized, the Sentencing Guidelines have not yet been revised to bring them into conformity with the First Step Act's authorization for defendants to bring their own motions after exhausting administrative procedures. Therefore, to the extent that the Guidelines commentary purports to vest authority solely with the BOP to make a determination of "Other Reasons," this delegation is no longer exclusive; courts also have independent authority to decide whether there are "Other Reasons" that amount to "extraordinary and compelling reasons" to grant a motion for sentence reduction. *See United States v. Marks*, 2020 WL 1908911, at *5-7 (W.D.N.Y. 2020); *United States v. Haynes*, 2020 WL 1941478, at *14 (E.D.N.Y. 2020) (collecting cases); *United States v. Pinto-Thomaz*, --- F. Supp. 3d ----, 2020 WL 1845875, at *2 (S.D.N.Y. 2020) (same); *Almontes*, 2020 WL 1812713, at *3 (same).

Beyond a court's determination as to whether there exists "extraordinary and compelling reasons" for a sentence reduction, a court must also "consider[] the factors set forth in [18 U.S.C.] section 3553(a) to the extent that they are applicable." 18 U.S.C. § 3582(c)(1)(A). Therefore, a court must examine the same factors it did when it initially sentenced the defendant, including the nature and circumstances of the crime, the defendant's history and characteristics, and the multiple purposes of sentencing, such as providing just punishment, deterring crime, protecting the public from further crimes by the defendant, and providing the defendant with rehabilitation. *See* 18 U.S.C. § 3553(a). In addition, a court must determine that "[t]he defendant is not a danger to the safety of any other person or to the community, as provided in 18 U.S.C. § 3142(g)." U.S.S.G. § 1B1.13(2).

*Factors applying to Damon Hill*

I first address whether Hill has shown "extraordinary and compelling" reasons that could warrant a sentence reduction. There is no doubt that the COVID-19 pandemic is extraordinary, having killed tens of thousands of people in the United States in recent months. It is clear as well that Hill's medical conditions of hypertension and being immunocompromised renders him significantly more vulnerable than the average person to contract COVID-19 and also to suffer the worst of its complications.

Nor is there doubt that a congregate prison environment is inherently unsuited to protecting against the COVID-19 virus. The virus is particularly insidious because of its invisible transmission by people who are infected but who do not feel or show any ill effect. Notwithstanding the substantial precautions taken by the BOP to reduce the likelihood of an outbreak at its facilities, the fact remains that prisons are somewhat like tinderboxes where the virus may spread rapidly once a single person is infected. And as noted above, FCI Danbury has already sustained a significant outbreak of COVID-19 infections.

When I sentenced Hill to a term of imprisonment I did not intend to sentence him to a significant risk of lethal infection at a federal prison facility. His medical conditions and evidence of numerous infections at FCI Danbury amount to "extraordinary and compelling reasons" for a sentence reduction, especially in light of the fact that only several more months remain in Hill's prison term.

I have also considered all of the sentencing factors under 18 U.S.C. § 3553. As to what is a just punishment and deterrence, I conclude that Hill has served a significantly punitive sentence—he was sentenced to a two-and-a-half-year prison sentence, and now he has a little more than six months remaining. The interests of rehabilitation are not advanced by his

continued confinement in BOP custody. Because of the restrictions imposed at FCI Danbury due to the COVID-19 crisis, he does not have access to prison programs. Nor does it appear likely that he will be released to a halfway house, which was otherwise scheduled to occur as soon as September 9, 2020. Instead, if Hill remains at FCI Danbury, he will likely remain under severe and non-rehabilitative conditions of confinement while the facility maintains intensive quarantine procedures to reduce the likelihood of more COVID-19 infections.

Finally, as to the issue of danger under 18 U.S.C. § 3142(g), I note the relevant period of the risk of danger to the community is the time between now and December 10, 2020, when Hill would otherwise be released from BOP imprisonment. I conclude that the risk of harm to the community during that interim period of several months can be addressed by requiring Hill to remain in home confinement at the home of Ayanna Walcott and subjecting him to electronic monitoring by the U.S. Probation Office. Because alcohol abuse has been a trigger for Hill to violate the law, I will also modify his conditions of release to prohibit Hill from any use or possession of alcohol and to continue his participation in Support Court as he has promised to do.

## CONCLUSION

For the foregoing reasons, the motion of defendant Damon Hill for a reduction in sentence (Doc. #49) is GRANTED. Hill's sentence is reduced to a term of time served as of May 20, 2020, on which date the Federal Bureau of Prisons shall RELEASE Damon Hill from BOP custody to travel directly to the home of Ayana Walcott and to commence his three-year term of supervised release. The Court amends Hill's conditions of supervised release to provide that Hill shall be on home confinement until December 10, 2020. He will be subject to monitoring using SmartLink technology, electronic monitoring, or the equivalent at the discretion of the U.S.

6

Probation Office. During the first 14 days of his release, Hill shall quarantine himself in Ayanna Walcott's home in a separate room without entering the space of other household members except as strictly necessary to use bathroom or other common facilities. Until September 9, 2020 (the date when he likely would have been released to a halfway house), Hill shall remain in Ayanna Walcott's home except that he may leave it only for purposes of obtaining a COVID-19 test, obtaining emergency medical care, or for any other reason approved in advance in writing by the U.S. Probation Office. After September 9, 2020, Hill shall remain in Ayanna Walcott's home until December 10, 2020 (which is the date that he would have been released from imprisonment), except that from the hours of 7:00am to 7:00pm he may leave home for reasons of medical necessity, employment, religious services, educational or rehabilitation programming, and any other reasons approved in writing by the U.S. Probation Office.

Additionally, Hill shall not possess or use any alcohol during this period of home confinement (from May 20, 2020 to December 10, 2020), and he shall resume his participation in Support Court with Judge Bryant. All other conditions of supervised release as previously imposed by the Court shall remain in full force and effect. The Court advises that it is highly likely to order Hill's re-imprisonment in the event of any material violation of the home detention conditions of confinement.

It is so ordered.

Dated at New Haven this 19th day of May 2020.

/s/ *Jeffrey Alker Meyer*_____
Jeffrey Alker Meyer
United States District Judge